## EX PARTE GOLDSMITH, *IN RE* FURMAN UNIVERSITY v. HUFF.

1. HOMESTEAD.—Where a bond is executed in 1880, and in 1887 the obligor moves off the lands on which he and his family were living in 1880, having mortgaged and sold the said lands, taking purchase money mortgages therefor, a portion of said tract afterwards being reconveyed to him, but he or his family never having again resided on the lands, after his decease, his widow cannot claim homestead in balance of proceeds of foreclosure of mortgage executed by him as against judgment on said bond.

2. INTESTATE ESTATE.—A JUDGMENT having lost its active energy may be proved against estate of judgment debtor and paid as a judgment.

Before PURDY, J., Greenville, June, 1903. Modified.

Petition of intervention by Wm. Goldsmith, Jr., *in re* Furman University, against Mary C. Huff *et al.* From Circuit decree, petitioner, Goldsmith, appeals.

*Messrs. Haynsworth, Parker & Patterson,* for appellant, cite: *Obligation is regarded as contracted at date of bond:* 5 S. C., 470; 15 Ency., 634. *Question must be determined as homestead laws stood at execution of bond:* 21 S. C., 378; 65 S. C., 237. *Homestead laws then only exempted resident lands:* Con. 1868, art. II., sec. 32; 11 S. C., 333; 19 S. C., 476; 21 S. C., 109; 56 S. C., 350. *Question of exemption has reference to condition of property at time of application:* 21 S. C., 19, 137; 23 S. C., 238; 41 S. C., 116.

*Messrs. McCullough & McSwain* and *Cothran, Dean & Cothran,* contra. The former cite: *Abandoning residence is a question of intention:* 15 Ency., 643, 646, 649, 651, 654; 47 S. C., 450; 29 S. C., 175; 65 S. C., 235. *Right once acquired, not lost:* 23 S. C., 319; 21 S. C., 18. *Surety may dispose of his property:* 1 Mass., 134. *Homestead right remains in lands reconveyed:* 44 S. C., 309.

April 20, 1904. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The action has already ripened into a judgment in favor of Furman University. All the lands covered by the mortgage have been sold, and by agreement of counsel the proceeds of such sale are retained by the Court as if said lands had not been converted into cash. There remaining $1,500 or $1,600 in cash, which will be sufficient to pay the dower adjudged in this action to be paid Mrs. Mary C. Huff, as doweress, and still leave a balance, the question of homestead of $1,000, claimed by Mrs. Mary C. Huff, awaits adjudication. This question was submitted to his Honor, Judge Purdy, under the following agreed statements of facts, to wit:

"This is an action to foreclose a mortgage owned by plaintiff, and the interests of the parties hereto are set forth in the complaint and the respective answers. Mary C. Huff, the widow of the deceased mortgagor, by her answer, among other things, claims homestead as such widow, and also one-sixth of the selling price of the land, as her dower. Inasmuch as the plaintiff's mortgage debt will be paid any way, it is not interested in the widow's claim for dower and homestead, subject to the determination of the only remaining question in the case, which grows out of these facts. On the 23d day of January, 1880, F. L. Huff made a bond as guardian for an infant to the judge of probate for this county, and J. A. Stone and Jas. W. Huff, the deceased mortgagor, signed the same as sureties. In 1888, proceedings were commenced in the probate court against F. L. Huff for an accounting, as guardian, and judgment was rendered against him for the sum of $696.50. Afterwards action was instituted in the Court of Common Pleas by the probate judge on the bond against Jas. W. Huff, who accepted service, and let judgment go by default, on the 25th day of September, 1889, for $732.80. This judgment was duly assigned to Julius C. Smith, as administrator of the estate of J. A. Stone, and

34—68

he now seeks to hold the estate of Jas. Huff liable for one-half the amount of said judgment, with interest on same, amounting to $366.40, with interest from September 25, 1889. The records of both courts have been introduced and may be referred to for more definite information.

"Jas. W. Huff, the deceased mortgagor and surety aforesaid, was married on April 9th, 1878, and immediately removed to the place which was sold in this action, and in which the homestead is claimed, and after that time resided continuously on said place until the fall of 1887, when he removed away about five miles, but did not acquire any other land and did not own any other land at the time of his death. The wife he married in 1878 survives him, and is now claiming homestead.

"This land was conveyed to Jas. W. Huff by his mother, Louisa A. Huff, on December 29, 1873, as will appear by reference to the complaint; the land was mortgaged by Jas. W. Huff in 1886 as 600 acres, more or less, and in the fall of 1887, he sold it off as 616 acres in several tracts, as appear by list attached, for which purchase money mortgages were taken, which had not been paid when suit was instituted herein; and in 1897, sixty-five acres were reconveyed to Jas. W. Huff, and in 1899, 216 acres were reconveyed to Huff.

"The question presented is whether Mary C. Huff, the widow, is entitled to claim, as against petitioner's debt, the fund as exempt under the homestead laws. If not, then the decree should direct payment of petitioner's debt out of any surplus remaining after payment of plaintiff's debt.

"The foregoing is to be used by the Circuit Judge in formulating his decree. April 16, 1903. Haynsworth, Parker & Patterson, attorneys for petitioner. McCullough & McSwain, Cothran & Cothran, attorneys for Mary C. Huff, widow of Jas. W. Huff."

Then follows the list of bonds and mortgages from the parties who had purchased lands from James W. Huff under deeds from him and who executed to him mortgages for the purchase money.

His Honor, Judge Purdy, by his decree, held, amongst other things, that Mrs. Mary C. Huff was entitled to her homestead of $1,000. Within due time, exceptions were filed to so much of said decree as allowed this homestead exemption of $1,000, as follows:

"1. In holding that Mary C. Huff is entitled to a homestead exemption in the funds now in hand to the extent of $1,000.

"2. In adopting the views set out in the argument of the attorneys for Mary C. Huff, it being submitted that said views are erroneous, as follows: (a) In holding that J. W. Huff, by removing from the mortgaged tract of land and selling off the same to various persons and taking back purchase money mortgages, did little more than make a lease of the premises to the various grantees, and in treating said lands as though they were merely rented by the said J. W. Huff; whereas, it should have been held that such transaction or transactions amounted to an abandonment of said lands as homestead or place of residence, or as being appurtenant to the homestead. (b) In holding that the right of homestead in the said lands was not subsequently divested by any act of the said J. W. Huff, it being submitted that his removal therefrom in the fall of 1887, and his sale of the said lands, divested his legal title and was an abandonment of the said land as a residence or homestead, and that this terminated the right of the said J. W. Huff and of his widow to claim the same as exempt under the homestead law, and his Honor erred in not so holding. (c) He erred in holding that J. W. Huff, after the sale by him in the fall of 1887, continued to rent these lands; this holding being against the agreed statement of facts. (d) In holding that the purchase money mortgages vested in J. W. Huff 'the highest equitable interest in said lands;' it being submitted that J. W. Huff, by virtue of these mortgages, had no title in the said lands, but only a lien thereon; and his Honor erred in not so holding. (e) In holding that the right to have the said lands exempt as a homestead was not afterwards lost.

It is submitted that when the said land was abandoned as a family homestead the right to thereafter claim the same as exempt ceased. (f) In holding that the obligation of the contract would not be impaired by the allowance of the homestead in the proceeds of sale; it being submitted that under the homestead laws of force at the date of the contract, the said proceeds of sale are not exempt, and to allow the same would be an impairment of the obligation of the contract. (g) In holding that article I., section 20, of the Constitution of 1868, placed no limitation on the nature of the property or on its conditions in the allowance of the exemption; it being submitted that this section should be construed in connection with article II., section 32, and that the exemption in lands would apply only as to the family homestead and lands appurtenant thereto. (h) In holding that the act of 1872, page 231, gave the widow the right to claim exemption in land not a part of the family homestead; it being submitted that under the terms of this act of the Constitution of 1868, she is entitled to an exemption in such lands only as constituted the family homestead or residence or as appurtenant to it. (i) In holding that the liability of J. W. Huff as surety did not accrue until judgment was rendered against the principal in 1888; whereas, he should have held that the obligation of the contract was of the date of the administration bond, to wit: January 23d, 1880. (j) In not holding that the question of exemption as against the claim of Julius C. Smith as administrator [now of Wm. Goldsmith, as administrator d. b. n of J. A. Stone, deceased,] must be determined under the homestead law as it stood on January 23, 1880, the date of the bond.

"3. He erred in not holding that J. W. Huff had, in 1887, abandoned said lands as a homestead, and that he never thereafter adopted them as a homestead.

"4. He erred in not holding that the said lands, having been abandoned in 1887, as a family homestead, and never having been thereafter adopted as a family homestead by either the said J. W. Huff or his widow, she is not entitled to

claim an exemption in said lands, or in the proceeds of sale thereof.

"5. He erred in holding that the proceeds of those portions of said tract not reconveyed to him were exempt as a homestead in lands; it being submitted that J. W. Huff had only a lien on said portions by virtue of his mortgages, and that under the homestead law as it stood on January 23, 1880, there was no exemption in either money or mortgages, and that he, therefore, erred in not directing the application of the proceeds of sale of said portions to the payment of the claim of Julius C. Smith, as administrator."

The respondent gave notice of motion to sustain the Circuit decree upon the following grounds:

"You will take notice that in case the Supreme Court be unable to sustain the conclusion of the Circuit. Judge, R. O. Purdy, we will move the Court to sustain same upon the additional grounds, as follows:

"That upon the second, third and fourth paragraphs of the answer of respondent to the petition herein, that Julius C. Smith has no right to intervene in this action, that the judgment which is the basis of his claim has no active energy, is but an ordinary indebtedness liquidated, that he has no lien upon the subject matter of this action, has not pursued the proper course to satisfy his indebtedness, and that the said Circuit Judge erred in not dismissing said petition, and erred in hearing same, and erred in refusing to dismiss same, and erred in not holding that petitioner is and has not pursued the proper course, and in not holding that he has no standing in this case and no right to intervene herein, as he has sought to do.

"That at the time of the conveyance of James W. Huff of the land described in the complaint, he was entitled to homestead therein, and that by his deeds his homestead exemption has passed to his grantees, and that upon the reconveyance to James W. Huff, after the year 1895, of 281 acres of said land, his right of homestead and that of his surviving widow attached to said 281 acres of land, under the law then and

now existing, and that, under the Constitution of 1895, the mortgage must be paid, so far as possible, out of the premises sold under the order of the Court herein, to which the homestead exemption did not extend, and said mortgage debt cannot first exhaust the proceeds of the sale of the said 281 acres of land conveyed to James W. Huff after 1895."

We will now proceed to dispose of the questions raised by the appeal. At the risk of repetition, we will state what we understand to be undisputed facts.

(A) By referring to the statement agreed to by the attorneys on each side of the controversy, the Circuit Judge was to formulate his decree, so far as the homestead was concerned, in answer to the following question: "Whether Mary C. Huff, the widow, is entitled to claim, as against petitioner's debt, the fund as exempt under the homestead laws? If not, then the decree should direct payment of petitioner's debt out of any surplus remaining after the payment of plaintiff's debt."

(B) Mary C. Huff, as the wife of James W. Huff, lived with her said husband, James W. Huff, upon the 616 acres of land as a place of residence from the year 1878 to the fall of the year 1887, when the said husband and wife removed from said 616 acres of land and took up a home at a distance of five miles from said 616 acres of land, which latter (home) they have never changed, but they did not purchase their new home. And the said James W. Huff, in the fall of the year 1887, sold and conveyed by deed every portion of said 616 acres of land and the said wife renounced her dower on each of the deeds to the 616 acres of land in favor of the respective purchasers thereof.

(C) James W. Huff mortgaged for his own debt the whole of said 616 acres of land to Furman University on the      day of            1880.

(D) James W. Huff became surety on the guardianship bond of F. L. Huff, on the 23d January, 1880, in the penalty of two thousand dollars. His principal (the guardian) made default in the discharge of his duties as such guardian

and by proper proceedings the amount of such default was ascertained to be $716.80. The holder of said bond sued the said James W. Huff as said surety on said bond and obtained judgment against him on the 25th day of September, 1889. One J. A. Stone was a cosurety with James W. Huff on said guardianship bond, and he, Stone, having died intestate, Julius C. Smith became his administrator, and as such administrator paid to the holder of the guardianship bond the amount of the judgment against James W. Huff and had said judgment duly assigned to him as said administrator, which said judgment is now held by the petitioner, William Goldsmith, the younger, as the successor of the said Julius C. Smith, who has departed this life, and the petitioner now claims one-half of the $716.80.

We are now prepared, so far as the facts are concerned, to go forward with the determination of the question. Is there a homestead for Mrs. Mary C. Huff? If there is a homestead, it must have existed prior to the 23d day of January, 1880, but it may be asked why is that date adopted? Under the Constitution of the United States, every State of the United States is forbidden to pass any law impairing a contract in existence at the time of the enactment of any such law. For the present, we will say, we assume that the contract of the guardian for whom James W. Huff became surety on the 23d day of January, 1880, operates from that date. Hence no legislation of this State after that date would be constitutional. What was the homestead law of this State in existence on the 23d day of January, 1880? First, the Constitution of this State, adopted in the year 1868, in section 20, of article I., provided: "* * * and a reasonable amount of property as a homestead shall be exempted from seizure or sale for payment of any debts or liabilities, except for the payment of such obligations as are provided for in this Constitution." Second, the Constitution of this State, in section 32, of article II., provided: "The family homestead of the head of each family residing in this State, such homestead consisting

of dwelling house, outbuilding and land appurtenant, not to exceed the value of one thousand dollars, and yearly product thereof, shall be exempt from attachment, levy or sale on any mesne or final process issued from any Court. To secure the full enjoyment of said homestead exemption to the person entitled thereto, or to the head of any family, the personal property of such person of the following character, to wit: household furniture, beds and bedding, family library, arms, carts, wagons, farming implements, tools, neat cattle, work animals, swine, goats and sheep, not to exceed in value in the aggregate sum of five hundred dollars, shall be subject to like exemption as said homestead, and there shall be exemption in addition thereto all necessary wearing apparel: *Provided,* That no property shall be exempt from attachment, levy or sale, for taxes or for payment of obligations contracted for the purchase of said homestead or the erection of improvements thereon: *Provided, further,* That the yearly products of said homestead shall not be exempt from attachment, levy or sale for the payment of obligations contracted in the production of the same. It shall be the duty of the General Assembly at their first session to enforce the provisions of this section by suitable legislation."

There can be no longer any doubt that these two sections must be construed together, for, as was said in *Norton* v. *Bradham,* 21 S. C., page 379: "It will be observed that these two provisions are placed in different articles, one in the article designated 'Declaration of Rights,' while the other is in the article designated 'Legislative Department.' As might have been expected, therefore, the former is confined to a simple declaration of the general right of exemption, and its concluding words manifestly point to some other provision of the Constitution where the general right thus declared is to be specifically defined and qualified. The latter, however, is specific in its terms, and declares to the law-making power what shall be the specific character and qualifications of the right which had been previously declared in general terms. We think, therefore, that in considering the question of the

limits of legislative power upon this subject, it would be erroneous to confine our attention to the provisions of article I., section 20, but, on the contrary, that section should be regarded as a mere general declaration of a right which is subsequently defined and limited by the provisions of article II., section 32. If the framers of the Constitution had contented themselves simply with the insertion of section 20, of article I., then, clearly, the legislature would have had the power to enact any law upon the subject, not inconsistent with the general right thus guaranteed. They could have fixed the amount and character of property to be exempted, as well as the mode of proceeding by which such claim should be asserted. But when the people in their sovereign capacity, acting through a convention, went on and by section 32, of article II., prescribed what should be the nature and character of the homestead and personal property exempted, describing what it should be, the particular kind of property, its amount and value, and to whose benefit it should enure, all these matters were placed beyond the domain of legislative power, and nothing was left for the General Assembly to do, except what was prescribed in the last clause of the section—pass the laws necessary and suitable 'to enforce the provisions of this section.' Hence, whenever the legislature undertakes to interpolate other provisions than those prescribed in that section, instead of simply confining themselves, as directed by the organic law, to the enactment of laws suitable for carrying into effect the provisions there prescribed, they are invading a province already fully occupied by the Constitution, and transcending the limitation placed upon their powers by that instrument."

Thus, it will be seen that this Court has spoken, and requires that these two sections shall be construed together. *Norton* v. *Bradham, supra,* also declares: "The debt upon which the judgment in favor of respondents was recovered, having been contracted prior to the constitutional amendment of 1880, it is quite clear that the question made by this appeal must be determined by the law as it stood previous to

the adoption of that amendment. *Gunn* v. *Barry,* 15 Wall, 610; *Cochrane* v. *Darcy,* 5 S. C., 125."

See, also, *De La Howe* v. *Harper,* 5 S. C., 472; *Sloan* v. *Hunter,* 65 S. C., page 237, where Mr. Justice Gary, as the organ of the Court, declares: "The rule is well settled in this State that the right of homestead is to be determined by the laws of force when the debt was contracted."

Also, 15 A. & E. Encyclopedia of Law, page 634, where it is said, "The date of the execution of the contract, and not that of the breach of it, governs in respect to the priority of the creditors over that of the homestead."

Thus it is manifest that the provisions of our Constitution and acts of the legislature of the General Assembly, in pursuance thereto, are to govern where such legislation is prior to the 23d of January, 1880; and, also, that the date of the 23d of January, 1880, when the bond was signed, fixed the limit beyond which the homesteader cannot claim. But, in the next place, the Circuit Judge in his decree seems to have fallen into the error of supposing that there was any doubt that when James W. Huff, in the year 1887, left the 616 acres of land and settled with his family at a distance of five miles therefrom, having sold and conveyed by deed all of the 616 acres of land in the same year (1887), he thereby abandoned his right of homestead in said lands. To our minds it is clear that the homestead was thus then abandoned, and there is nothing in the case going to show that he, or Mrs. Mary C. Huff, his wife, ever again took possession of said lands to reside thereon. By our decisions, the law in existence governing homesteads on the 23d of January, 1880, guaranteed to no person a homestead in lands, except where resided upon and the land appurtenant to said residence. *Chafee* v. *Rainey,* 21 S. C., 19; *Rollings* v. *Evans,* 23 S. C., 328; *Chalmers* v. *Turnipseed,* 21 S. C., 137; *Trimmier* v. *Winsmith,* 41 S. C., 116.

Again, we do not see how Mrs. Mary C. Huff can hope to obtain a homestead exemption when the mortgages are considered; this question was flatly decided against her con-

tention in *Union Bank* v. *Northrop,* 19 S. C., 476.    It is thus apparent that we must sustain all the exceptions of the appellant.

We will not consider respondent's notice of motion to sustain the Circuit decree.    While we admit that the answer of Mrs. Mary C. Huff to the petition herein does set up certain rights as against said petitioner, yet when she saw proper, through her attorneys, to sign the agreement, which has been hereinbefore set forth, a portion of which we quoted in the beginning of our consideration of the appeal, we must hold that she abandoned all said claims and based her defense upon her claim to homestead, and really consented that a decree should go against her if said claim of homestead should be rejected.    But, if we are at liberty to consider the questions she now seeks to raise against the right of the petitioner to have one-half of his judgment paid out of the funds now in Court, we could not sustain the same; for, granted that the judgment cannot be enforced by execution, having lost its active energy, still twenty years have not elapsed since the rendition of the judgment, and under the laws of this State regulating the payment of claims against the estate of an intestate, such judgment would operate as a judgment against such estate.    This motion of respondent must be overruled.

It follows from what we have hereinbefore said that the decree of the Circuit Judge must be so modified that the claim of homestead to Mrs. Mary C. Huff is denied, and that the judgment presented by the petitioner as established must be paid.    In all other respects the Circuit decree is affirmed.

It is the judgment of this Court, that the judgment of the Circuit Court be modified as hereinbefore required, and after such modification shall have been made, such decree shall be affirmed.